Alison M. Bernal (SBN 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE, MILLER & SWEET, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
T: (805) 963-2345
F: (805) 284-9590

Joseph G. Sauder (*pro hac vice* forthcoming)
jgs@sstriallawyers.com
Joseph B. Kenney (*pro hac vice* forthcoming)
jbk@sstriallawyers.com
SAUDER SCHELKOPF LLC
1109 Lancaster Avenue
Berwyn, PA 19312
T: (888) 711-9975
F: (610) 421-1326

*Attorneys for Plaintiffs and the Proposed Classes*

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

JOE FETTIG and CAL KROME, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

BELKIN INTERNATIONAL, INC.,

Defendant.

Case No.: 3:26-cv-01590

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs Joe Fettig and Cal Krome bring this action on behalf of themselves and all others similarly situated against Defendant Belkin International, Inc. ("Defendant" or "Belkin"). Plaintiffs allege the following based on their personal knowledge as to their facts and upon information and belief and the investigation of counsel as to all other matters.

**INTRODUCTION**

1. This case concerns Defendant Belkin International, Inc.'s ("Defendant" or "Belkin") line of Wemo smart products. Defendant advertised these products as smart home devices that can be controlled and automated via Wi-Fi.

2. In July 2025, Defendant Belkin International, Inc. abruptly announced it was eliminating support for 27 of its Wemo products (the "Products"), reducing these expensive products to nothing more than their basic, non-smart counterparts, starting on January 31, 2026.

3. Belkin represented its Wemo products as "wi-fi connected devices" intended to "make home automation accessible and easy to use for everyone."[1] Belkin also represented that its products "work with major voice assistants," and allow consumers to "control things like lights and appliances" in their homes.[2]

4. Consumers, who paid premium prices for the luxury and convenience of smart appliances are left with non-smart versions of the Products that they could have purchased for far less money.

5. Belkin has also refused to issue refunds to many consumers, including Plaintiffs. As such, Plaintiffs and other consumers must incur out-of-pocket costs to replace the Products with other smart products to be able to use smart functionality.

6. Accordingly, Plaintiffs, on behalf of themselves and others similarly situated, brings this action for violations of the California Consumer Legal Remedies Act, California Unfair Competition Law, Indiana Deceptive Consumer Sales Act, and for common law fraud and unjust enrichment.

---

[1] https://wemoofficial.com/about-us/ (last visited February 24, 2026)

[2] *Id.*

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

## THE PARTIES

**Plaintiff Fettig**

7. Plaintiff Joe Fettig ("Plaintiff") is a citizen of Indiana and resident of Johnson County, Indiana.

8. Plaintiff purchased approximately 18 of Defendant's Products between 2020 and April of 2022 for approximately $595.

9. Plaintiff used the Products throughout his home and purchased them for, and relied on, their smart capability.

10. Plaintiff purchased the Products specifically because of their smart capability, which differentiated them from non-smart alternatives, including the ability to control these products through an app and their compatibility with major voice assistants.

11. Defendant charged, and Plaintiff paid, a premium for the Products because of their smart capability.

12. The Products were designed, marketed, and sold to remain operational as smart devices for significantly longer than the few years that Plaintiff had the Products.

13. Plaintiff's Products are on the list of devices that lost functionality after January 31, 2026, which eliminated the smart functionality of the Products.

14. Defendant did not disclose to Plaintiff that it would cease support for the Wemo Products shortly after Plaintiff's purchase.

15. If Plaintiff had known that these products would be rendered obsolete, he would not have purchased the products or would have paid significantly less for them.

16. Plaintiff has suffered an ascertainable loss as a result of Defendant's representations and omissions, including but not limited to out-of-pocket loss associated with the loss of functionality of the Products, and the cost of replacing the Products with new smart products in order to regain the functionality he lost as a result of Defendant's actions.

17. Plaintiff contacted Defendant both by email and certified mail in approximately August of 2025 to attempt to obtain a refund, but Defendant did not provide any refunds.

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

18. On September 29, 2025, Plaintiff sent a pre-suit demand letter to Defendant notifying it of its violations and providing it with an opportunity to correct its business practices.

**Plaintiff Cal Krome**

19. Plaintiff Cal Krome ("Plaintiff") is a citizen of California and resident of Alameda County.

20. Plaintiff purchased a variety of Defendant's Products between 2017 and 2021 for approximately $400. Plaintiff owns approximately three light switches and 5 smart plugs.

21. Plaintiff used the Products throughout his home and purchased them for, and relied on, their smart capability.

22. Defendant charged, and Plaintiff paid, a premium for the Products because of their smart capability.

23. The Products were designed, marketed, and sold to remain operational as smart devices for significantly longer than the few years that Plaintiff had the Products.

24. Plaintiff's Products are on the list of devices that lost functionality after January 31, 2026, which eliminated the smart functionality of the Products.

25. Defendant did not disclose to Plaintiff that it would cease support for the Wemo Products shortly after Plaintiff's purchase.

26. If Plaintiff had known that these products would be rendered obsolete, he would not have purchased the products or would have paid significantly less for them.

27. Plaintiff has suffered an ascertainable loss as a result of Defendant's representations and omissions, including but not limited to out of pocket loss associated with the loss of functionality of the Products, and the cost of replacing the Products with new smart products in order to regain the functionality he lost as a result of Defendant's actions. To date, Plaintiff has paid approximately $200 to replace the Products with other smart products.

28. On February 24, 2026, Plaintiff sent a pre-suit demand letter to Defendant notifying it of its violations and providing it with an opportunity to correct its business practices.

/ / /

/ / /

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**Defendant**

29. Defendant Belkin International, Inc. is a Delaware corporation headquartered at 555 S. Aviation Blvd., Suite 180, El Segundo, CA 90245.

30. Defendant owns the Wemo brand and designs, produces, markets, and sells the affected Products.

## JURISDICTION

31. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

32. This Court has personal jurisdiction over Defendant because Defendant maintains its corporate headquarters in California.

## VENUE

33. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant transact business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district. Additionally, a substantial part of the events or omissions giving rise to the claim occurred in this district, Defendant has advertised in this district, and has received substantial revenue and profits from its sales of the Products in this district.

## DIVISIONAL ASSIGNMENT

34. Because this lawsuit arose in Alameda County, it should be assigned to the San Francisco/Oakland Division of this Court.

## FACTUAL ALLEGATIONS

### I. Smart Home Technology

35. The early 2000s saw a rapid increase in the availability and popularity of "smart" home technology.[3] "Smart" home technology uses a computer linked to the internet to interconnect home

[3] https://blog.bccresearch.com/the-evolution-of-smart-home-technology (last visited February 24, 2026)

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

devices such as heating and air conditioning, lighting, security systems, and common household appliances.

36. Once these devices are connected to the internet, they can then be monitored and managed remotely by consumers, typically through an app on the consumer's computer, cell phone, or tablet.

37. Since the early 2000's, the smart home technology market has exploded, reaching an estimated $147.52 billion in 2025.[4] Smart home technology is now ubiquitous, and consumers can purchase "smart" versions of most household appliances and devices. These products include voice-controlled refrigerators[5] and dishwashers,[6] a litter box that cleans itself and sends reports about your cat's health to your phone,[7] and lighting that can be remotely controlled from anywhere you have cell service. Consumers can also control outlets and light switches from their smartphones or using a voice assistant like Amazon Echo or Google Home.

38. "Smart" products are more expensive than their non-smart counterparts. For instance, a single, 75-watt, smart light bulb (brand Philips) costs $54.98,[8] but a consumer can buy a four-pack of regular 75-watt bulbs from the same brand for about $9, or $2.25 per bulb.[9] Put differently, the smart version commands a 400% price premium over the non-smart version.

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

---

[4] https://www.fortunebusinessinsights.com/industry-reports/smart-home-market-101900 (last visited February 24, 2026)

[5] https://www.homedepot.com/p/LG-29-cu-ft-SMART-MyColor-InstaView-Standard-Depth-MAX-4-Door-French-Door-Refrigerator-in-Stainless-Steel-with-Craft-Ice-LH29S8565S/329904698#see-more-details (last visited February 24, 2026)

[6] https://www.homedepot.com/p/Bosch-Benchmark-Series-24-in-Top-Control-Tall-Tub-Custom-Panel-Ready-Dishwasher-with-Stainless-Steel-Tub-Quietest-39-dBA-SHV9PCM3N/325602596 (last visited February 24, 2026)

[7] https://purrsong-global.com/collections/best-sellers/products/lavviebox (last visited February 24, 2026)

[8] https://www.homedepot.com/p/Philips-Hue-75-Watt-Equivalent-A19-Smart-LED-Color-Changing-Light-Bulb-with-Bluetooth-1-Pack-563254/316148596 (last visited February 24, 2026).

[9] https://www.homedepot.com/p/Philips-75-Watt-Equivalent-A19-Non-Dimmable-E26-LED-Light-Bulb-With-EyeComfort-Technology-Soft-White-2700K-4-Pack-565374/321121509 (last visited February 24, 2026).

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

39. Consumers pay these higher prices specifically for the added convenience these smart products offer.

**II. Belkin's Wemo Smart Home Products**

40. In or around 2011, Belkin entered the smart home technology marketplace with its brand Wemo.

41. Belkin sold smart doorbells that allowed consumers to "securely monitor [their] property," as well as smart light switches and smart plugs that allowed consumers to "control lighting in multiple rooms" and "remotely power off devices." Belkin advertised these products as "cutting-edge smart home technology."[10]

42. Wemo "creates and curates a collection of smart household technology which work together to make your house a home . . . Wemo works to keep every home connected, safe, and entertained."[11]

43. Belkin advertised that its smart devices were compatible with cloud-based voice assistants like Google Home and Amazon Echo.[12] Many consumers already have this voice-assistant technology in their homes, and Wemo's compatibility with these devices is a major selling point for consumers looking to upgrade their home.

**III. Belkin Unilaterally Strips Smart Functionality from Consumer Devices**

44. On July 11, 2025, Belkin announced that it intended "to discontinue Wemo cloud services and app support for select Wemo products effective January 31, 2026."[13]

---

[10] http://web.archive.org/web/20241228011533/https://www.belkin.com/products/wemo-smart-home/ (last visited February 24, 2026).

[11] http://web.archive.org/web/20241228011533/https://www.belkin.com/products/wemo-smart-home/ (last visited February 24, 2026)

[12] https://www.wemo.com/works-with-wemo/amazon-alexa/; https://www.wemo.com/works-with-wemo/google-home/ (last visited February 24, 2026)

[13] https://www.belkin.com/support-article/?articleNum=335419 (last visited February 24, 2026)

45. After January 31, 2026, "the Wemo app and all cloud-based features—including remote access and voice assistant integrations (Amazon Alexa, Google Assistant)—will no longer function for affected products."[14]

46. In other words, consumers' Wemo smart products, overnight, became "dumb" and no longer function as smart technology that its customers paid a premium for at the time of purchase.

47. Belkin ceased support for the following Wemo products (collectively, the "Products"):

| | | | |
|---|---|---|---|
| 1 | Wemo Link | 15 | Wemo Switch |
| 2 | Wemo Humidifier | 16 | Wemo Light Switch v2 |
| 3 | Wemo CrockPot | 17 | Wemo Insight |
| 4 | Wemo Heater B | 18 | Wemo Smart Light Switch 3-Way |
| 5 | Wemo Air Purifier | 19 | Wemo Mini Smart Plug |
| 6 | Wemo Heater A | 20 | Wemo Wi-Fi Smart Light Switch w/ Dimmer |
| 7 | Wemo Coffee Maker (Mr. Coffee) | 21 | Wemo Smart Light Switch |
| 8 | Wifi Baby Monitor | 22 | Wemo HomeKit |
| 9 | Wemo LED Lighting Bundle | 23 | Wemo Dimmer Light Switch |
| 10 | Wemo Motion Sensor | 24 | Wemo Mini Plugin Switch |
| 11 | Wemo Switch + Motion Sensor | 25 | Wemo Light Switch |
| 12 | Wemo Maker Module | 26 | Wemo Outdoor Plug |
| 13 | Wemo Zigbee Bulb E27 | 27 | Wemo Mini Smart Plug |
| 14 | Wemo Insight v2 | | |

48. By discontinuing cloud services and app support for the Products, Defendant rendered them obsolete overnight. They no longer function as "smart" technology.

[14] *Id.*

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

49. Defendant represented to consumers that Wemo devices are "smart home devices that can be controlled through an app," and that consumers would be able "to automate and control things like lights and appliances in your home remotely."[15]

50. Defendant's choice to cease cloud support for the Products has stripped them of their "smart" functionality, rendering them functionally equivalent to their non-smart counterparts without properly reimbursing its customers for the significant loss in value.

## CLASS ACTION ALLEGATIONS

51. Plaintiffs bring this action on behalf of themselves and on behalf of the following Class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the proposed Nationwide Class is defined as follows:

> All persons in the United States that purchased Defendant's Products.

52. In the alternative, Plaintiffs seek to represent the following state classes:

> **Indiana Class**: All persons in Indiana that purchased any of Defendant's Products.

> **California Class**: All persons in California that purchased any of Defendants' Products for primarily personal, family or household purposes, as defined by California Civil Code § 1791(a), in California.

53. Together, the Nationwide Class, the Indiana Class, and the California Class are referred to as the "Class." Excluded from the Class are Defendant, its affiliates, employees, officers and directors, the Judge(s) assigned to this case, and any member of the Judges' staff and immediate families. Plaintiffs reserve the right to modify, change, or expand the Class definition after conducting discovery.

54. Numerosity: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class is unknown at this time, such information being in the sole possession of Defendant and obtainable by

---

[15] https://wemoofficial.com (last visited February 24, 2026)

Plaintiffs only through the discovery process, Plaintiffs believe that hundreds of thousands of Products have been sold throughout the United States.

55. Existence and Predominance of Common Questions of Fact and Law: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a. Whether Defendant's choice to cease support rendered the affected Products obsolete;

b. Whether Defendant's actions violate the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-3, *et seq.*, California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*; or California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*;

c. Whether Defendant's actions constitute a breach of the express or implied warranties for its Products;

d. Whether Plaintiffs and the Class members are entitled to monetary damages and/or other remedies, and if so, the nature of any relief.

56. Typicality: Plaintiffs' claims are typical of the claims of the Class since Plaintiffs and each member of the Class purchased an affected Product. Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

57. Adequacy: Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class that they seek to represent, they have retained counsel that are competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

58. Superiority: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class to individually and effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

59. Injunctive Relief: Pursuant to Fed. R. Civ. P. 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief, corresponding declaratory relief, or final equitable relief with respect to the Class as a whole.

## CAUSES OF ACTION

## COUNT I

### Violation of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*

### (On Behalf of the Nationwide Class or, Alternatively, the California Class)

60. Plaintiffs incorporates by reference each preceding paragraph as if fully set forth herein.

61. Plaintiffs bring this count on behalf of themselves and the Nationwide Class against Defendant. Alternatively, Plaintiff Krome brings this count on behalf of himself and the California Class against Defendant.

62. The California Consumers Legal Remedies Act prohibits deceptive practices in connection with the conduct of a business providing goods, property, or services to consumers primarily for persona, family, or household purposes. The self-declared purposes of the CLRA are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.

63. Defendant is a "person" as defined in Cal. Civ. Code § 1761(c).

64. Plaintiffs and Class members are "consumers" as defined in Cal. Civ. Code § 1761(d).

/ / /

65. The Products are "goods" and "services" as defined by Cal. Civ. Code § 1761(a) and (b).

66. Plaintiffs and Class members purchase the Products for personal, family, and household purposes, as defined by Cal. Civ. Code § 1761(d).

67. Plaintiffs purchased the Products based on representations that the Products had smart capabilities and would continue to function as smart home technology.

68. Defendant substantially impaired the use, safety, or value of the Products by stopping support for them, which represents an unlawful, unfair, and deceptive business act or practice under the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1770(a)(5), (7), (14), and (16).

69. Defendant violated the California Consumers Legal Remedies Act when it sold Plaintiffs and the Class members the Products and concealed the fact that it would substantially impair the functionality of the Products in the future, rendering the Products' smart capabilities obsolete.

70. Moreover, Defendant omitted material information about the Products which it was legally obligated to disclose and never informed Plaintiffs or Class members that Defendant would discontinue services essential to the continued functionality of the Products.

71. Defendant's misrepresentations and nondisclosures regarding the Products were material to Plaintiffs and Class members, because they relied upon Defendant's representations concerning the smart tech functionality of the Products, and a reasonable person would have considered those representations material in deciding whether to purchase the Products.

72. Plaintiffs and Class members relied upon Defendant's material misrepresentations and nondisclosures. Had Plaintiffs and the Class members known that Defendant would render the affected Products obsolete or even that the Products could be rendered obsolete, they would not have purchased the Products, or would have paid substantially less for them.

73. As a result of Defendant's conduct, Plaintiffs and Class members have been harmed. Plaintiffs and Class members would not have purchased the affected Products had they known that Defendant could or would choose to intentionally diminish the functionality of the Products.

74. Pursuant to Cal. Civ. Code § 1782(a), Plaintiff Krome sent a letter to Defendant notifying it of its CLRA violations and providing it with an opportunity to correct its business

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

practices. If Defendant does not correct its business practices, Plaintiff will amend (or seek leave to amend) the complaint to add claims for monetary relief, including for actual, restitutionary, and punitive damages under the CLRA.

75. Plaintiff Krome's CLRA venue declaration is attached as an exhibit to this Complaint in accordance with Cal. Civ. Code § 1780(d).

**<u>COUNT II</u>**

**Violations of California's Unfair Competition Law,**

**Cal. Bus. & Prof. Code §§ 17500, *et seq.***

**(On Behalf of the Nationwide Class or, Alternatively, the California Class)**

76. Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

77. Plaintiffs bring this count on behalf of themselves and the Nationwide Class against Defendant. Alternatively, Plaintiff Krome brings this count on behalf of himself and the California Class against Defendant.

78. California's Unfair Competition Law ("UCL") proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Defendant's conduct violates each of these prohibitions.

**Unlawful Conduct**

79. Defendant's conduct is unlawful, in violation of the UCL, because, as set forth herein, it violates the CLRA.

**Unfair Conduct**

80. Defendant acted in an immoral, unethical, oppressive, and unscrupulous manner by selling the Products at a price premium and concealing that Defendant would eventually render the Products obsolete.

81. The gravity of the harm resulting from Defendant's unfair conduct outweighs any potential utility of the conduct. The practice of selling the Products, rendering those Products obsolete, and failing to provide an adequate remedy harms the public at large and is part of a common and uniform course of wrongful conduct.

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

82. There are reasonably available alternatives that would further Defendant's business interests of increasing sales. For example, Defendant could have: (a) informed consumers at the time of purchase that it was planning on rendering the Products obsolete; and/or (b) provided refunds to all affected customers.

83. The harm from Defendant's unfair conduct was not reasonably avoidable by consumers.

**Fraudulent Conduct**

84. Defendant's conduct is fraudulent in violation of the UCL. Defendant's fraudulent acts include knowingly and intentionally concealing from Plaintiffs and the Class members the fact that Defendant would render the Products obsolete, and falsely marketing and misrepresenting the Products as being smart products when it knew it would render them obsolete.

85. Defendant's misrepresentations and omissions alleged herein caused Plaintiffs and the Class members to purchase Products they would not have, or pay more than otherwise would have.

86. Defendant had a duty to disclose the fact that it would render the Products obsolete as smart products because it had superior and exclusive knowledge, and because its decisions would affect the central functionality of the Products.

87. Accordingly, Plaintiffs and the Class members have suffered injury in fact, including lost money or property, as a result of Defendant's unlawful, unfair, and fraudulent acts. Absent these acts, Plaintiffs and the Class members would not have purchased their Products at the prices they paid or would not have purchased them at all.

88. Plaintiffs seek appropriate relief under the UCL, including such orders as may be necessary: (a) to enjoin Defendant from continuing its unlawful, unfair, and fraudulent acts or practices, and (b) to restore Plaintiffs and the Class members any money Defendant acquired by its unfair competition, including restitution. Plaintiffs also seek reasonable attorneys' fees and expenses under applicable law.

/ / /

/ / /

/ / /

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**COUNT III**

**Violations of the Indiana Deceptive Consumer Sales Act**

**Ind. Code § 24-5-0.5-3, *et seq.***

**(On Behalf of the Indiana Class)**

89. Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

90. Plaintiff Fetig brings this count on behalf of himself and the Indiana Class against Defendant.

91. Defendant is a "person" within the meaning of Ind. Code § 24-5-0.5-2(2) and a "supplier" within the meaning of Ind. Code § 24-5-.05-2(a)(3).

92. Plaintiff and Indiana Class members' purchases of the Products are "consumer transactions" within the meaning of Ind. Code § 24-5-.05-2(a)(1).

93. Indiana's Deceptive Consumer Sales Act ("Indiana DCSA") prohibits a person from engaging in a "deceptive act," which includes representing: "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; . . . (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; . . . (c) Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in writing that such representation is true if such other supplier shall know or have reason to know that such representation was false." Ind. Code § 24-5-0.5-3.

94. In the course of its business, Defendant concealed and suppressed material facts concerning the future functionality of the Products.

95. Defendant thus violated the Act by, at minimum: (1) representing that the Products have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Products are of a particular standard and quality when they are not; (3) advertising the Products with the intent not to sell them as advertised; and (4) otherwise engaging in conduct likely to deceive.

96. Defendant's actions as set forth above occurred in the conduct of trade or commerce.

97. Defendant engaged in misleading, false, unfair or deceptive acts or practices that violated the Act by failing to disclose and actively concealing that it would render the Products obsolete, by marketing its Products as reliable and of high quality, and by presenting itself as a reputable manufacturer that stood behind its products after they were sold.

98. Defendant intentionally and knowingly misrepresented material facts regarding the Products with intent to mislead Plaintiff and the Indiana Class.

99. Defendant had a duty to disclose the fact that it would render the Products obsolete as smart products because it had superior and exclusive knowledge, and because its decisions would affect the central functionality of the Products.

100. Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Indiana Class, about the true value of the Products.

101. Plaintiff and the Indiana Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the Indiana Class members who purchased the Products would not have purchased them at all and/or would have paid significantly less for them. Plaintiff and the Indiana Class also suffered diminished value of their Products, as well as lost or diminished use.

102. Defendant's unlawful acts and practices complained of herein affect the public interest.

103. As a direct and proximate result of Defendant's violations of the Act, Plaintiff and the Indiana Class have suffered injury-in-fact and/or actual damage.

104. Pursuant to Ind. Code § 24-5-0.5-4, Plaintiff and the Indiana Class seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for Plaintiff and each Indiana Class member, including treble damages up to $1,000 for Defendant's willfully deceptive acts.

105. Plaintiff and the Indiana Class also seek punitive damages.

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**COUNT IV**

**Unjust Enrichment**

**(On Behalf of the Nationwide Class or, Alternatively, the Indiana and California Classes)**

106. Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

107. Plaintiffs bring this action on behalf of themselves and the Class against Defendant.

108. Plaintiffs and members of the Class conferred a benefit on Defendant when they purchased the Products at premium prices.

109. Defendant has been unjustly enriched by retaining the revenues from Plaintiffs and the Class's purchases of the Products even after Defendant intentionally rendered those Products inoperable by discontinuing cloud services and app support.

110. Defendant has been and continues to be unjustly enriched at the expense of Plaintiffs and the Class, and its retention of this benefit under the circumstances would be inequitable.

**COUNT V**

**Common Law Fraud**

**(On Behalf of the Nationwide Class or, Alternatively, the Indiana and California Classes)**

111. Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

112. Plaintiffs bring this action on behalf of themselves and the Class against Defendant.

113. Defendant made material omissions concerning a presently existing or past fact. For example, Defendant did not fully and truthfully disclose to their customers the fact that it would render the Products obsolete for their central purpose, which was not readily discoverable until after the Products were purchased. As a result, Plaintiffs and the other Class members were fraudulently induced to purchase the Products.

114. These omissions were made by Defendant with knowledge of their falsity, and with the intent that Plaintiffs and Class members rely upon them.

115. Plaintiffs and Class members reasonably relied on these omissions, and suffered damages as a result.

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**COUNT VI**

**Trespass to Chattels**

**(On Behalf of the Nationwide Class or, Alternatively, the Indiana and California Classes)**

116. Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

117. Plaintiffs bring this action on behalf of themselves and the Class against Defendant.

118. Plaintiffs and the Class members possessed their Products up to and including January 31, 2026, when Defendant intentionally interfered with Plaintiffs and Class members' use of the Products by eliminating cloud services and app support, rendering the Products useless for their advertised purpose of "smart" functionality.

119. Plaintiffs and the Class members did not consent to Defendant's interference with their personal property.

120. Defendant's interference directly and proximately caused Plaintiffs and Class members' injuries by rendering the Products obsolete. The elimination of the smart technology capabilities diminished the Products' quality and value and deprives Plaintiffs and the Class the full use of their personal property. Plaintiffs and the Class members are thus entitled to recover damages in an amount to be determine at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. appoint Plaintiffs as the representatives of the Class and their counsel as Class Counsel;

C. award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief;

E. award reasonable attorney's fees and costs; and

F. grant such further relief that this Court deems appropriate.

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Dated: February 24, 2026

NYE, STIRLING, HALE, MILLER & SWEET, LLP

By: /s/ Alison M. Bernal

Alison M. Bernal, Esq. (SBN 264629)
alison@nshmlaw.com
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345
Facsimile: (805) 284-9590

Joseph G. Sauder (*pro hac vice* forthcoming)
jgs@sstriallawyers.com
Joseph B. Kenney (*pro hac vice* forthcoming)
jbk@sstriallawyers.com
**SAUDER SCHELKOPF**
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0581
Facsimile: (610) 421-1326

*Attorneys for Plaintiffs and the Proposed Classes*

NYE, STIRLING, HALE, MILLER & SWEET
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.

Dated: February 24, 2026

NYE, STIRLING, HALE, MILLER & SWEET, LLP

By: /s/ *Alison M. Bernal*

Alison M. Bernal, Esq. (SBN 264629)
alison@nshmlaw.com
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345
Facsimile: (805) 284-9590

Joseph G. Sauder (*pro hac vice* forthcoming)
jgs@sstriallawyers.com
Joseph B. Kenney (*pro hac vice* forthcoming)
jbk@sstriallawyers.com
**SAUDER SCHELKOPF**
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0581
Facsimile: (610) 421-1326

*Attorneys for Plaintiffs and the Proposed Classes*